UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SANTOS CORNELIO MORENITO,

                Petitioner,                              **DECISION AND ORDER**
                                                                     No. 02-CV-6273

    -vs-

BRIAN FISCHER, Superintendent,

                Respondent.
_____

## INTRODUCTION

Petitioner, Santos Cornelio Morenito ("Morenito"), filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in Monroe County Court on charges of criminal possession of a controlled substance in the first degree, criminal sale of a controlled substance in the third degree, and conspiracy in the second degree. The parties have consented to disposition of this matter by the undersigned pursuant to 28 U.S.C. § 636(c).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

During the month of April 1997, members of the Rochester Police Department's Special Investigation Unit were assigned to execute a court-ordered eavesdropping warrant on cell phone number (716) 766-0164. T.477. Officer Joseph Celorio ("Celorio"), an experienced undercover narcotics officer, was assigned to work the warrant. He listened to all of the intercepted phone calls and testified that many of the calls were "coded," meaning that they were phrased in the jargon used by individuals engaged in drug-trafficking. Based upon his training and experience, Celorio was able to interpret much of the jargon used on the calls. Most of Celorio's

-1-

interpretations were corroborated by visual surveillance conducted by the police. In addition, the testimony of Morenito's co-defendant, Pastor Rivera ("Rivera"), corroborated Celorio's interpretation of the messages contained within the phone conversations.

According to Celorio, several of the initially intercepted phone calls revealed communications between Morenito and unknown males in the New York City area in which Morenito attempted to determine the availability and price of a kilo of cocaine. T.604-610.[1] For instance, Celorio testified that on May 2, 1997, at 12:39 p.m., Morenito called a number in New York City and was advised by the person who answered the phone that there was cocaine available. Morenito was told that he should come down to take a look at it before deciding whether he wanted it. Morenito responded that he would drive down to the City either that night or the next day. T.616-20.

Celorio testified that immediately after that call, Morenito called an unidentified female and requested the pager number of "Elvido." T.620, 635. Several phone calls were exchanged between Morenito and Elvido. During one of them, they agreed to meet on May 2nd. T.637. On May 3rd at 10:50 p.m., Morenito called a number in New York City and informed the person who answered that he was going to be taking a trip there. T.639.

Co-defendant Rivera admitted during cross-examination that he was Elvido and the during the May 2nd meeting, he agreed to drive Morenito to New York City. According to Rivera, the purpose of the trip was for Morenito to go clothes-shopping. T.902-03, 908. Rivera said that Morenito offered to pay him $200 plus his expenses to drive him down to New York City. T.915. Rivera testified that they drove to New York City on May 3rd, arriving at about 1 p.m. They went

---

[1] Citations to "T.___" refer to the trial transcript.

to a restaurant to eat, and then Morenito borrowed Rivera's car for about three and a half hours. T.904. 913. When Morenito returned, he told Rivera that he was not going to buy clothes after all and that he would see him (Rivera) back in Rochester. T.905. Rivera testified that he was unaware that any cocaine was placed in his vehicle. T.905.

Rivera was arrested on May 4, 1997, at about 12:05 a.m. after his vehicle was stopped by the police on Route 490 in the City of Rochester, shortly after he exited the New York State Thruway. T.788. The car was confiscated as evidence and the police obtained a search warrant for the vehicle. During their search of the car, the police found a hidden compartment controlled by a hydraulic lift. Activation of the lift opened the compartment and revealed a kilo of cocaine secured therein. T.790-91. A search of Rivera's apartment revealed a .380 caliber handgun and a bottle of inositol, a vitamin B supplement and a chemical commonly used as a cutting agent when packaging cocaine for re-sale. T.866. Rivera could not explain how the inositol or the handgun came to be in his house. T.929, 931.

After Rivera's arrest, the wiretap on Morenito's phone remained in place and several more calls were intercepted. In one conversation, Celorio heard Morenito ask the female whom he previously had contacted on May 2nd what had happened to Elvido. T.642. She responded by asking Morenito to come over to her house.  After Morenito continued to press her concerning Elvido's whereabouts, she relented and told him that Elvido had been caught. T.642. Morenito hung up and immediately called Mani's Grocery Store. The man who answered the phone asked Morenito how things were going and whether "it was all there," meaning, did the cocaine package arrive intact, to which Morenito responded, "no." T.645. On May 4th at about 12:00 p.m., Morenito called another male and told him that he "did not have anything to eat." Viewing

this statement in the totality of the circumstances, Celorio determined that Morenito meant that he recently had suffered an economic loss. T.654, 658.

Morenito was arrested on May 6, 1997; a wallet, a pager instrument, and a cellular telephone were seized from his car and confiscated as evidence. T.828. A bottle of acetone, a chemical commonly used to "re-rock" cocaine before packaging it for sale, was found at Morenito's house. When Morenito was taken in for booking, Celorio asked him pedigree questions necessary in order to complete his prisoner data report. After he began speaking to Morenito, Celorio immediately recognized Morenito's voice as being the same voice that he had listened to about 150 times while the wiretap was in place. In particular, Celorio recognized Morenito's voice of the person negotiating the purchase of a kilo of cocaine in New York City.

Morenito did not testify in his behalf at trial. His defense was to show that it was Rivera, not he, who was the actual drug dealer. The jury convicted both Morenito and Rivera as charged in the indictment. Morenito was sentenced to a term of imprisonment of 22 years to life.

On direct appeal, Morenito argued that his conviction should be reversed because he did not receive notice pursuant to New York Criminal Procedure Law ("C.P.L.") § 710.30 with respect to the responses he gave to the pedigree questions asked by the police or to the voice identification made by the police during booking. Morenito also argued that his due process rights were violated by the brief substitution of a different judge during jury deliberations due to a family emergency in the presiding judge's family. The Appellate Division, Fourth Department, of New York State Supreme Court unanimously affirmed the conviction, holding that the issue concerning the substitution of judges was not preserved for review due to defense counsel's failure to object. The court also held that no C.P.L. § 710.30 notice was required because the

police officer's identification of defendant's voice was merely confirmatory. Leave to appeal was sought only with respect to the C.P.L. § 710.30 notice issue. The New York Court of Appeals denied leave to appeal.

On September 18, 2001, Morenito filed an application for a writ of error *coram nobis* alleging that his appellate counsel was ineffective for failing to argue, for example, that defendant had been excluded from sidebar conferences and that trial counsel was ineffective in failing to move for severance or a suppression hearing. The Fourth Department summarily denied Morenito's application.

This habeas petition followed on May 2, 2002. Morenito raises three grounds for habeas relief: (1) absent the proper notice under C.P.L. § 710.30, the trial court erred in admitting the voice identification testimony of the police officer; (2) the substitution of the trial judge during jury deliberations violated petitioner's due process rights; and (3) appellate counsel was ineffective in failing to argue that petitioner was excluded from a sidebar conference and that trial counsel was remiss in not moving for severance. In its answer, respondent asserts that the judge-substitution issue is procedurally defaulted and that the C.P.L. § 710.30 issue is unexhausted because petitioner did not present it in federal constitutional terms to the state courts on appeal.

For the reasons set forth below, the petition is denied.

## ANALYSIS OF THE PETITION

**I.    The Claim that the Substitution of the Trial Judge Violated Due Process is Procedurally Defaulted**

The Supreme Court has made clear that the "adequate and independent state ground

doctrine applies on federal habeas [review],” such that “an adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice.” *Harris v. Reed*, 489 U.S. 255, 262 (1989) (citations and internal quotations omitted); *see also*, *e.g.*, *Schlup v. Delo*, 513 U.S. 298, 314-16 (1995). A procedural default occurs when, for example, the defendant fails to follow a state procedural rule at trial, such as the New York rule requiring a contemporaneous objection at the time of the alleged error. *E.g.*,  *Fernandez v. Leonardo*, 931 F.2d 214, 215 (2d Cir. 1991) (citing N.Y. Crim. Proc. Law § 470.05(2)). “[I]n order to preclude federal review [under the adequate and independent state ground doctrine], the last state court to render judgment must 'clearly and expressly state [ ] that its judgment rest[ed] on a state procedural bar.'” *Jones v. Vacco*, 126 F.3d 408, 415 (2d Cir. 1997) (quoting *Glenn v. Bartlett*, 98 F.3d 721, 724 (2d Cir. 1996), *cert. denied*, 520 U.S. 1108 (1997)).

Respondent contends that this claim is procedurally defaulted and points to the Appellate Division's holding that the issue was not preserved for review due to defense counsel's failure to object. I agree that in the present case, there is a procedural bar since the Appellate Division "explicitly invoke[d] a state procedural bar rule as a separate basis for decision,"*Harris v. Reed*, 489 U.S. at 264, namely, New York's contemporaneous objection rule, N.Y. Crim. Proc. Law § 470.05. *See also Garcia v. Lewis*, 188 F.3d 71 (2d Cir. 1999); *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). Morenito alleges neither cause for, nor prejudice resulting from, the procedural default of the public trial claim, and the Court finds neither on the record before it. Furthermore, Morenito has not made a colorable showing of actual innocence, as he is required

to do in order to benefit from the "fundamental miscarriage of justice" exception. *See Schlup v. Delo*, 513 U.S. at 314-16. Therefore, this claim is procedurally defaulted and barred from federal habeas review.

### B.     The C.P.L. § 710.30 Notice Issue is Not Cognizable on Habeas Review

Morenito's argues that the prosecution should have been precluded from introducing the police officer's testimony that he recognized Morenito's voice because the defense was not given notice as required by C.P.L. § 710.30.[2] This Court may entertain an application for a writ of habeas corpus only if Morenito's custody violates the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. § 2254(a). Federal courts do not have the power to correct a misapplication of state law unless that misapplication itself violates federal law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Ponnapula v. Spitzer*, 297 F.3d 172, 182 (2d Cir. 2002). A claim pursuant to C.P.L. § 710.30 does not present a federal question, however. *E.g.*, *Ventura v. Artuz*, 2000 WL 995497, No. 99-Civ-12025 (S.D.N.Y. July 19, 2000) (violation of C.P.L § 710.30 is "clearly a state law issue and is not cognizable under federal habeas review"); *Smith v. Artus*, 2005 WL 1661104, at *7, No. 03-Civ-9819 (S.D.N.Y. July 14, 2005) (same). Therefore, the Court is precluded from reviewing Morenito's claim relating to alleged violations of C.P.L. § 710.30's notice provision. Given that this Court has found that the C.P.L. § 710.30 notice issue is not cognizable on habeas review, respondent's argument that the claim is unexhausted is moot and the Court need not address it.

---

[2] "Whenever the people intend to offer at a trial (a) evidence of a statement made by a defendant to a public servant, which statement if involuntarily made would render the evidence thereof suppressible upon motion . . . , or (b) testimony regarding an observation [*i.e.*, identification] of the defendant either at the time or place of the commission of the offense . . . , they must serve upon the defendant a notice of such intention . . . ." N.Y. Crim. Proc. Law § 710.30(1).

### C. Ineffective Assistance of Appellate Counsel

In his petition, Morenito asserts that he did not receive the effective assistance of appellate counsel because his appellate attorney did not take issue with (1) petitioner's exclusion from sidebar conferences; and (2) trial counsel's failure to request a severance. *See* Petition at 8 (Docket #1). These claims are exhausted, having been raised in Morenito's application for a writ of error *coram nobis*.

To show that his counsel's representation was ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984), Morenito must establish that (1) the attorney's performance fell below an objective standard of reasonableness; and (2) the deficient representation prejudiced the defense. *Strickland*, 466 U.S. at 687. The *Strickland* two-pronged standard applies equally to claims of ineffective assistance of appellate counsel. *E.g.*, *Claudio v. Scully*, 982 F.2d 798, 803 (2d Cir. 1992), *cert. denied*, 508 U.S. 912, 113 S.Ct. 2347, 124 L.Ed.2d 256 (1993). The "prejudice" inquiry requires that a petitioner show that there was a reasonable probability that his appeal would have been successful had the omitted claims been presented to the state court. *Mayo,* 13 F.3d at 533-34; *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Aparicio v. Artuz,* 269 F.3d 78, 95 (2d Cir. 2001).

#### 1. Failure to Argue that Petitioner Was Excluded from Sidebars

As the basis for this claim that appellate counsel should have argued that Morenito was improperly excluded form sidebar conferences, Morenito points to the following incident during jury selection. A female juror who stated that she had been a victim of a crime asked to come up to the bench. She explained that she had been a victim of statutory rape eleven years ago. T.161. The judge and the prosecutor questioned the woman thoroughly and she unequivocally stated that

her experience would have no impact on her ability to sit as a fair and impartial juror. T.161-62.

This claim was not likely to be successful on appeal for several reasons. First of all, it is not clear that petitioner actually was excluded from this conference with the juror. The record reflects that prior to the disputed sidebar, the judge made diligent efforts to ensure that petitioner was present for all conferences at the bench. *E.g.*, T.155 (stating to defense counsel when a juror requested a sidebar, "Get your client up here, he did not waive in the presence of potential jurors, he just waived for challenges."). It is reasonable to assume that the court's failure to note petitioner's presence on the record did not reflect petitioner's absence but instead was a failure to note the presence of *any* of the parties–the two defense counsel and the prosecutor–who were involved in the sidebar. Due to this ambiguity in the record, the appellate court likely would have found the claim unpreserved for review. *E.g.*, *People v. Arhin*, 203 A.D.2d 62, 63, 609 N.Y.S.2d 604 (App. Div. 1st Dept. 1994) ("Defendant's contention that his right to be present was violated by the side-bar questioning of prospective jurors in his absence is unpreserved, the record being inadequate to show that defendant actually was not present[.]").  Secondly, even if the petitioner was absent from the disputed sidebar, it was not the type of exclusion that would have warranted reversal. Because the questioning concerned only the juror's ability to be objective and impartial, *i.e.*, her "general bias or hostility," as opposed to her knowledge of the specific facts of the case, petitioner's constitutional right to be present was not implicated. *Id.* (citing *People v Mitchell*, 80 NY2d 519, 529, 606 N.E.2d 1381, 591 N.Y.S.2d 990 (N.Y. 1992); *People v. Sloan*, 79 N.Y.2d 386, 592 N.E.2d 784, 583 N.Y.S.2d 176 (N.Y. 1992)).

Since Morenito cannot show that there is a reasonable likelihood that he would have been able to prevail on appeal had this claim been raised, he is unable to show that he was prejudiced

by counsel's performance. Omission of insignificant claims that will likely be unsuccessful does not prejudice a defendant. *See Mayo v. Henderson*, 13 F.3d 528, 534 (2d Cir. 1994) ("To establish prejudice in the appellate context, a petitioner must demonstrate that 'there was a "reasonable probability" that [his] claim would have been successful . . . .'") (alteration in original) (quoting *Claudio*, 982 F.2d at 803)). Because Morenito has failed to show prejudice, the Court need not address the performance prong of *Strickland*. ("[T]here is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one."). 466 U.S. at 697.

### 2.    Failure to Argue that Trial Counsel Should Have Moved to Sever

Morenito argues that appellate counsel should have raised an ineffective assistance of counsel claim premised on trial counsel's failure to move for a severance. He contends that joinder was improper and prejudicial since the defenses of the co-defendants were "obviously gonna [*sic*] clash at trial." Given New York's statutory rules and case law regarding joinder and severance, it is highly unlikely that such a claim would have been successful on appeal.

Here, it appears that the charges against Morenito and his co-defendant Rivera were properly joined in a single indictment; they were jointly charged with every offense alleged in the indictment, the offenses were based on a common scheme or plan, and the offenses charged were based upon the same criminal transaction. *See* N.Y. Crim. Proc. Law § 200.40(1); *People v. Mahoubian*, 74 N.Y.2d 174, 544 N.Y.S.2d 769, 543 N.E.2d 34 (N.Y. 1989). If Morenito's counsel had moved for severance, he needed to show "good cause"– *i.e.*, that petitioner would have been "unduly prejudiced by a joint trial." *Id.* However, where, as here, proof against both defendants was supplied to a great extent by the same evidence, only the most cogent reasons

would have warranted a severance. *Mahoubian*, 74 N.Y.2d at 183 (quotation omitted). The New York Court of Appeals has articulated a two-part test for determining whether severance is required: "[S]everance is compelled where the core of each defense is in irreconcilable conflict with the other and where there is a significant danger, as both defenses are portrayed to the trial court, that the conflict alone would lead the jury to infer defendant's guilt[.]" *Mahoubian*, 74 N.Y.2d 174; *accord*, *e.g.*, *People v. Cardwell*, 78 N.Y.2d 996, 575 N.Y.S.2d 267, 580 N.E.2d 753 (N.Y. 1991).

Upon my review of the trial transcript, I am convinced that there is no reasonable likelihood that defense counsel would have succeeded in convincing the trial court that the two defendants' defenses were antagonistic, mutually exclusive or irreconcilable, *see Mahoubian*, 74 N.Y.2d at 183 (finding prejudice where defendants's defenses "were not only antagonistic but also mutually exclusive and irreconcilable" and "[t]he jury could not have credited both defenses"). Here, Rivera did not directly implicate Morenito–Rivera merely testified that he drove Morenito to New York City to buy clothing, that Morenito borrowed his car for a few hours, and that Rivera had no idea that the car had a secret compartment, let alone how the cocaine came to be in the car. If anything, it could be argued that the joinder was more detrimental to Rivera's case and might have inured somewhat to Morenito's benefit–I note that Morenito's defense counsel actually aggressively questioned Rivera and attempted to implicate him in the crime by accusing him of being the main drug dealer, rather than just a "mule."

Simply put, the severance argument was not likely to have been successful at the trial court level or before the appellate court. Because trial counsel did not neglect to make an otherwise meritorious motion, appellate counsel was not deficient in deciding not to assert that

trial counsel was ineffective on direct appeal. *See Mayo*, 13 F.3d at 534. As Morenito cannot show that he was prejudiced by appellate counsel's omission, he cannot establish that he was denied the effective assistance of counsel on his direct appeal. *See Strickland*, 466 U.S. at 697.

## CONCLUSION

For the reasons stated above, petitioner Santos Cornelio Morenito's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed.  Because petitioner has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability. *See* 28 U.S.C. § 2253.

**IT IS SO ORDERED**

/s/ *Victor E. Bianchini*
_____
VICTOR E. BIANCHINI
United States Magistrate Judge

DATED:   January 12, 2006
         Rochester, New York.